COPY

1  WRIGHT, FINLAY & ZAK, LLP
2  T. Robert Finlay, Esq., SBN 167280
   Lukasz I. Wozniak, Esq., SBN 246329
3  Kristina M. Pelletier, Esq., SBN 279533
4  4665 MacArthur Court, Suite 200
   Newport Beach, CA 92660
5  Telephone: (949) 477-5050; Facsimile: (949) 608-9142
6  kpelletier@wrightlegal.net

7  Attorneys for Defendant,
8  WELLS FARGO BANK, N.A. successor by merger to WELLS FARGO HOME
   MORTGAGE (erroneously sued as WELLS FARGO HOME MORTGAGE, a
9  subsidiary of WELLS FARGO BANK)

10

11              UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14  CRUZ MARTINEZ,                    ) Case No.:
15                                    ) CV12- 05224 RGK (JCGx)
16                        Plaintiff,  ) NOTICE OF REMOVAL OF
17                                    ) ACTION PURSUANT TO 28 U.S.C.
    v.                                ) §1441(b)
18                                    )
19  WELLS FARGO HOME                  ) [DIVERSITY JURISDICTION]
20  MORTGAGE, a subsidiary of WELLS   )
    FARGO BANK, N.A.; CAL-            )
21  WESTERN RECONVEYANCE             )
    CORPORATION; and Does 1 to 50,   )
22  inclusive,                        ) Complaint filed:  April 27, 2012
23                                    )
24                        Defendants. )
25  _____ )

26       TO THE CLERK OF THE UNITED STATES DISTRICT COURT

27  FOR THE CENTRAL DISTRICT OF CALIFORNIA:

28       PLEASE TAKE NOTICE that defendant WELLS FARGO BANK, N.A.

                              1
                       NOTICE OF REMOVAL

1  successor by merger to WELLS FARGO HOME MORTGAGE (erroneously sued
2  as WELLS FARGO HOME MORTGAGE, a subsidiary of WELLS FARGO
3  BANK) ("Wells Fargo ") hereby removes to this Court, the state court action
4  described below:

5      1.     On April 27, 2012, Plaintiff CRUZ MARTINEZ ("Plaintiff") filed a
6  complaint against Wells Fargo in the Superior Court of the State of California,
7  County of Los Angeles, entitled *Cruz Martinez v. Wells Fargo Home Mortgage et.*
8  *al.*, Case No. BC483423 ("State Court Action."). A true and correct copy of the
9  Summons and the Complaint are attached hereto as **Exhibit "A."** Any remaining
10 pleadings from the State Court Action will be filed with this Court as soon as they
11 are received by Wells Fargo.

12     2.     Pursuant to 28 U.S.C. §1446(a), Wells Fargo files this Notice in the
13 District Court of the United States for the district and division within which the
14 State Court Action is pending.

15     3.     Pursuant to 28 U.S.C. §1446(d), a copy of this Notice with its
16 attachments will promptly be served on Plaintiff in the State Court Action, and
17 notice thereof will be filed with the clerk of the Los Angeles County Superior
18 Court.

19     **I.     REMOVAL BASED ON DIVERSITY OF CITIZENSHIP**

20     The State Court Action may be removed to the United States District Court,
21 in accordance with 28 U.S.C. §1441(b) since this District Court has original
22 jurisdiction over the State Court Action on the basis of diversity of citizenship
23 pursuant to 28 U.S.C. §1332. Specifically, the State Court Action is a civil action
24 between citizens of different states and the amount in controversy exceeds the sum
25 of $75,000.00.

26 **A.     DIVERSITY OF CITIZENSHIP**

27     In order to qualify for diversity of citizenship jurisdiction, all of the named
28 plaintiffs' citizenships <u>must</u> be completely diverse from all the named defendants'

1   citizenships, excluding nominal, fraudulent and/or sham defendants.  Here,

2   complete diversity exists because:

3   ### 1.    *Plaintiff's Citizenship*

4   A natural person's citizenship is determined by his or her naturalization to

5   the United States and domicile state at the time of filing (which is the state he or

6   she resides in with the intention to remain or to which he or she intends to return).

7   *Kanter v. Warner–Lambert Co.*, 265 F3d 853, 857 (9th Cir. 2001).  In the present

8   matter, Plaintiff alleges that he is a resident of the County of Los Angeles, State of

9   California. (Complaint ¶1, attached hereto as Exhibit "A.")  Therefore, Plaintiff is

10  deemed a citizen of the State of **California** for the purposes of diversity

11  citizenship jurisdiction.

12  ### 2.    *Defendant Wells Fargo's Citizenship*

13  Wells Fargo is a national banking association chartered under the laws of

14  the United States with its main office in South Dakota.  "All national banking

15  associations shall, for the purposes of … actions by or against them, be deemed

16  citizens of the States in which they are respectively located." 28 U.S.C. §1348.  A

17  national bank is located, for diversity jurisdiction purposes, only in the state

18  designated as its main office (and not in every state where it has branch offices).

19  *Wachovia Bank v. Schmidt*, 126 S. Ct. 941, 946-52 (2006).  Wells Fargo's main

20  office is located in Sioux Falls, South Dakota. Indeed, Federal courts have

21  overwhelmingly decided that Wells Fargo is a South Dakota citizen for purposes

22  of diversity.  *See DeLeon v. Wells Fargo Bank, NA.,* 729 F. Supp. 2d 1119 (2010);

23  *Cochran v. Wachovia Bank, N.A.*, Case No. CV 10-018, 2010 U.S. Dist. LEXIS

24  38379 (C.D. Cal. Mar. 9, 2010); *Nguyen v. Wells Fargo Bank, N.A., et al.,* Case

25  No. C-10-4081, 2010 U.S. Dist. LEXIS 113246 at *10-15 (N.D. Cal. Oct. 25,

26  2010); *Peralta v. Countrywide Home Loans, Inc.*, Case No. C 09-3288, 2009 U.S.

27  Dist. LEXIS 112387, at *14-15 (N.D. Cal. Nov. 16, 2009); *Giordano v. Wachovia*

28  *Mortg., FSB*, Case No. 5:10-cv-04661, 2010 U.S. Dist. LEXIS 136284, at *5

(N.D. Cal. Dec. 14, 2010); *Atienza v. Wells Fargo Bank, N.A.*, Case No. C 10-03457, 2011 U.S. Dist. LEXIS 1738, at *4-6 (N.D. Cal. Jan. 4, 2011); *See also Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 52930 at *5-7 (May 17, 2011) ("Following Schmidt, district courts, including this one, concluded that Schmidt left open the possibility that a national banking association might also be "located" for citizenship purposes in the state of its principal place of business. [citations omitted]. **The Court, however, has reconsidered its position and now reaches a different conclusion….Wells Fargo is a citizen of South Dakota.** The Court is accordingly satisfied that diversity jurisdiction exists in this case.")(emphasis added). Accordingly, Wells Fargo is a citizen of **South Dakota** for purposes of diversity of citizenship jurisdiction.

### 3. *Defendant Cal-Western Reconveyance Corporation's Citizenship*

Defendant Cal-Western Reconveyance Corporation ("Cal-Western") filed a declaration of non-monetary status ("DNMS") pursuant to *California Civil Code* §2924l in the State Court Action on May 30, 2012, which has remained unopposed. A true and correct copy of the DNMS is attached hereto as **Exhibit "B."** As such, under the *Civil Code* §2924l(d), Cal-Western has transformed itself into a non-party to this action. Cal. Civ. Code §2924l(d). As a result, it can no longer be held liable and need not participate in this action in any way. *Id.*

Federal courts have acknowledged that a party that invokes non-monetary status under *Civil Code* §2924l need not consent to removal and is not to be treated as a defendant to the action, thus, its "*citizenship is disregarded for purposes of assessing diversity jurisdiction.*" *Cabriales*, 2010 U.S. Dist. LEXIS 24726, at *6-7; *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[a] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1556, pp. 710-711 (1971); *see also*

NOTICE OF REMOVAL

1  *Amaro v. Option One Mortgage Corp.*, No. EDCV 08-1498-VAP.  Nonetheless,
2  Cal-Western consented to the removal of this matter on June 7, 2012.
3  Accordingly, Cal-Western's citizenship is immaterial for purposes of diversity of
4  citizenship jurisdiction.

5       **4.**  ***Defendants DOES 1 to 50's Citizenship***

6       Upon information and belief, DOES 1 to 50 have not been named or served,
7  and thus their consent is not required. *Emrich v. Touche Ross & Co.*, 846 F.2d
8  1190, 1193 n.1 (9th Cir. 1988) (the requirement for consent applies "only to
9  defendants properly joined and served in the action."); *Salverson v. Western States*
10  *Bankcard Ass'n*, 731 F.2d 1423, 1428 (9th Cir. 1984).

11       Because no Defendant has the same citizenship as Plaintiff, complete
12  diversity of citizenship exists.

13  **B.**  **AMOUNT IN CONTROVERSY**

14       In addition to diversity of citizenship, "the matter in controversy [must]
15  exceed[s] the sum or value of $75,000, exclusive of interest and costs..."  28
16  U.S.C. §1332(a)(1). "In actions seeking declaratory or injunctive relief, it is well-
17  established that the amount in controversy is measured by the value of the object
18  of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n.,* 432 U.S. 333, 347
19  (1977); *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002).  Here, Plaintiff
20  seeks to enjoin Wells Fargo from foreclosing on the subject property.  The loan
21  Plaintiff admittedly received in 2007, which is the object of this litigation, is in the
22  amount of $292,500.00 (See Deed of Trust, referenced in Plaintiff's Complaint
23  ¶11, attached hereto as **Exhibit "C"**) – an amount that exceeds $75,000.
24  Therefore, this Action meets the jurisdictional amount in controversy.

25  **II.**  **NOTICE IS TIMELY**

26       Plaintiff's Complaint is the first pleading in the State Court Action.
27  Plaintiff's Complaint was served on Wells Fargo via personal service on May 8,
28  2012.  Accordingly, Wells Fargo brings this Notice of Removal within thirty (30)

NOTICE OF REMOVAL

days, as required by 28 U.S.C. §1446(b).

### III.  CONCLUSION

**WHEREFORE,** the State Court Action is hereby removed from the State Court to this United States District Court, and removing Defendant Wells Fargo prays that this District Court proceed, pursuant to 28 U.S.C. §1441, as well as any other relevant and applicable law, as if this Action had been originally filed in this District Court, and that the proceedings in the State Court be stayed in all respects.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated:  June 15, 2012          By:   _____

T. Robert Finlay, Esq.
Lukasz I. Wozniak, Esq.
Kristina M. Pelletier, Esq.
Attorneys for Defendant,
WELLS FARGO BANK, N.A. successor
by merger to WELLS FARGO HOME
MORTGAGE (erroneously sued as
WELLS FARGO HOME MORTGAGE, a
subsidiary of WELLS FARGO BANK)

# EXHIBIT "A"

04/27/2012  13:34    714558ï190                    LAW OFF GARRY JONES                    PAGE  02

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO HOME MORTGAGE, a subsidiary of WELLS
FARGO BANK, N.A.; (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CRUZ MARTINEZ

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

APR 27 2012

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: (El nombre y dirección de la corte es): SUPERIOR COURT OF CALIFORNIA | CASE NUMBER: (Número del Caso): **BC 483423** |
|---|---|

County of Los Angeles, Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

Dept 50

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del demandante, o del demandante que no tiene abogado, es):
Law Offices of Garry Lawrence Jones, 400 West 4th Street, Santa Ana, CA 92701, (714) 558-7000

NANCY ALVAREZ

| DATE: APR 27 2012 (Fecha) | JOHN A. CLARKE (Secretario) | , Deputy (Adjunto) |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): Well Fargo Home Mortgage etc.

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☒ by personal delivery on (date): 5/8/12

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| MARTINEZ v. WELLS FARGO HOME MORTGAGE, et. al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CAL-WESTERN RECONVEYANCE CORPORATION; and Does 1 to 50, inclusive.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

04/27/2012   13:34   7145587190              LAW OFF GARRY JONES                     PAGE   10

1   GARRY LAWRENCE JONES (S.B. 66344)                    **FILED**
    gli@gtilaw.com                                SUPERIOR COURT OF CALIFORNIA
2   LAW OFFICES OF GARRY LAWRENCE JONES              COUNTY OF LOS ANGELES
    400 West 4th Street, 2nd Floor
3   Santa Ana, California 92701                          APR 27 2012
    Telephone: (714) 558-7999
4   Facsimile: (714) 558-7190                   John A. Clarke, Executive Officer/Clerk
                                                 BY_____, Deputy
5                                                        Nancy Alvarez
    Attorneys for Plaintiffs,
6   CRUZ MARTINEZ                          D50 John L. Segal

7
              SUPERIOR COURT OF CALIFORNIA, LOS ANGELES COUNTY
8
                       STANLEY MOSK COURTHOUSE
9

10

11  CRUZ MARTINEZ                          Case No.: BC 483423

12                   Plaintiff,            COMPLAINT FOR:

13  v.                                       1.  WRONGFUL FORECLOSURE
                                                 (CALIFORNIA CIVIL
14  WELLS FARGO HOME MORTGAGE,                    CODE 2923.5)
    a subsidiary of WELLS FARGO BANK,
15  N.A.; CAL-WESTERN
    RECONVEYANCE CORPORATION;
16  and Does 1 to 50, inclusive,

17

18                   Defendants.

19

20

21

22  Plaintiffs CRUZ MARTINEZ allege as follows:

23                       FIRST CAUSE OF ACTION

24  (WRONGFUL FORECLOSURE (2923.5) against WELLS FARGO HOME MORTGAGE,

25              a subsidiary of WELLS FARGO BANK, N.A.)

26     1.     At all relevant times herein, Plaintiff was an individual residing in the County

27  Los Angeles, State of California.

28     2.     Defendant, WELLS FARGO HOME MORTGAGE, a subsidiary of WELLS

1   FARGO BANK, N.A., at all relevant times, was doing business as a servicing agent for the

2   holder of the note and deed of trust between Plaintiff and Defendants.

3        3.    Defendant, CAL-WESTERN RECONVEYANCE CORPORATION, was doing

4   business as the trustee of the deed of trust held between Plaintiff and Defendants.

5        4.    Whenever reference is made in this Complaint to any Defendant(s), that

6   allegation shall mean that each Defendant acted individually and jointly with the other

7   Defendants.

8        5.    Any allegations about acts of any corporate or other business Defendant means

9   that the corporation or other business entity did the acts alleged through its officers, directors,

10   employees, agents, brokers and/or representatives while they were acting within the actual or

11   ostensible scope of their authority.  The exact terms and conditions of the agency, representation,

12   or employment relationships are presently unknown to Plaintiff, but when the information is

13   ascertained, leave of court will be sought to insert appropriate allegations.

14        6.    At all relevant times, each Defendant committed the acts, caused or directed

15   others to commit the acts, or permitted others to commit the acts alleged in the Complaint.

16   Additionally, some or all of the Defendants acted as agent or the assignee or the substitute of

17   ~~other Defendants and all of the Defendants acted within the scope of their capacity whether~~

18   acting as an agent, the assignee or substitute of another.

19        7.    At all relevant times, each Defendant knew or realized that the other Defendants

20   were engaging in or planned to engage in the violations of law alleged in the Complaint.

21   Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful

22   conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.  Each

23   Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful

24   acts and thereby aided and abetted the other Defendants in the unlawful conduct.

25        8.    At all relevant times, Defendants have engaged in conspiracy, common

26   enterprise, and a common course of conduct, the purpose of which is and was to engage in the

27   violations of law alleged in this Complaint.  This conspiracy, common enterprise, and common

28   course of conduct continue to the present.

9.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 to 50, inclusive, are presently unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Plaintiffs allege on information and belief that each fictitiously named Defendant is responsible in some manner for the events described herein and is liable to Plaintiffs for the damages they have incurred. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

10.    At all times relevant herein, Plaintiffs were the owners of and resided at and in the real property commonly known as 118 East Reeve Street, Compton CA 90220, hereinafter referred to as "Subject Property". The Subject Property is the family dwelling.

11.    In 2007, Plaintiff became interested in purchasing a home. He obtained a loan through Plaza Home Mortgage, Inc. for monthly payments of $1,824.82. The transaction was recorded on March 20, 2007, as Instrument No. 20070623484 of Official Records in the Office of the County Recorder of Los Angeles County, California.

12.    In late 2010, as a result of the economic crisis, Plaintiff suffered financial hardship. As a result, it became increasingly difficult for Plaintiffs to make his payments.

13.    In late 2010, Plaintiffs tried to seek relief from WELLS FARGO HOME MORTGAGE. They started to contact WELLS FARGO HOME MORTGAGE to see if they could obtain a loan modification from Defendant WELLS FARGO HOME MORTGAGE to reduce their payments. Plaintiffs had a difficult time seeking relief. Every time that the Plaintiffs contacted defendant WELLS FARGO HOME MORTGAGE to obtain information about a loan modification request, they were only able to speak to collection representatives who kept telling them that someone would call them back to see if they could be considered for a loan modification request. Plaintiffs were only the given the run around and the usual collection options. At no time were Plaintiffs contacted by anyone either in person or by telephone to *assess* Plaintiff's financial situation and *explore* options for Plaintiff to avoid foreclosure.

14.    In the meantime, without any prior notice to Plaintiff, Defendant CAL-WESTERN RECONVEYANCE CORPORATION, on behalf of the servicer and the noteholder, caused to be recorded, on January 25, 2012, a Notice of Default and Election to Sell Under Deed

COMPLAINT
3

1   of Trust in the Official Records of Los Angeles County, California.

2       15.   On information and belief Plaintiffs allege that WELLS FARGO HOME

3   MORTGAGE accepted TARP funds and became bound by the terms thereof.  As a result, the

4   Defendants in this action are required by Department of the Treasury directives to offer

5   modifications to distressed homeowners/borrowers and to follow HAMP guidelines.  The

6   conduct of Defendants described above is in violation of HAMP guidelines and *Civil Code* §

7   2923.5  Accordingly, Defendants have failed to follow the requirements and spirit of *Civil Code*

8   § 2923.5.  Defendants' attempts to proceed with foreclosure are therefore wrongful and Plaintiff

9   is entitled to the relief provided by § 2923.5 declaring that the notice of default filed in this case

10   is null and void.

11       WHEREFORE, Plaintiff prays for judgment against the defendants for:

12      1. An order for relief under *Civil Code* § 2923.5;

13      2. Costs of suit;

14   3. For such other and further relief as the court deems proper.

15   DATED:   4 /23/ 2012

16

17

18           GARRY LAWRENCE JONES,

19           Attorney for Plaintiff.

20

21

22

23

24

25

26

27

28

COMPLAINT
4

1
2
3
4
5                                    **VERIFICATION**

6        I am a plaintiff in this action. I have read the Complaint herein. The facts stated in the

7   Complaint are within my own knowledge except for those facts alleged under information and

8   belief and as to those facts; I believe them to be true.

9        I declare, under penalty of perjury, under the laws of the State of California, that the

10  forgoing is true and correct.

11
12
13  Dated:   *April 23, 2012*

14
15                              *Cruz Martinez*

16                              CRUZ MARTINEZ,
                                Plaintiff

17
18
19
20
21
22
23
24
25
26
27
28

                                    COMPLAINT

                                        5

EXHIBIT "B"

PETER J. SALMON (SBN 174386)
CUONG M. NGUYEN (SBN 248586)
ERIC TSAI (SBN 273056)
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385
E-MAIL: etsai@piteduncan.com

Attorneys for Defendant
CAL-WESTERN RECONVEYANCE CORPORATION



CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 30 2012

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Mary Flores

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES - CENTRAL CIVIL WEST

CRUZ MARTINEZ,

    Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, a subsidiary of WELLS FARGO BANK, N.A.; CAL-WESTERN RECONVEYANCE CORPORATION; and Does 1 to 50, inclusive,

    Defendants.

Case No. BC483423

**DEFENDANT CAL-WESTERN RECONVEYANCE CORPORATION'S DECLARATION OF NON-MONETARY STATUS**

**[Civil Code § 2924l]**

Complaint Filed:    April 27, 2012
Trial Date:    Not Yet Set

I, **Lorrie Womack**, declare and state as follows:

1.    I am the **Assistant Vice President** for Defendant, Cal-Western Reconveyance Corporation ("Cal-Western"), in the above-referenced action. I have personal knowledge of the facts set forth herein, and if called upon to do so, I would and could competently testify thereto.

2.    On April 27, 2012, Plaintiff, Cruz Martinez ("Plaintiff"), filed a Complaint ("Complaint") in the Superior Court of California, Los Angeles County, for Wrongful Foreclosure (California Civil Code 2923.5). The Complaint arises out of a loan involving the borrower and the lender. Cal-Western is simply the foreclosure trustee ("Trustee"), with the power to foreclose on the property that arises from the Deed of Trust securing the loan to Plaintiff.

3.    Based on my review of Plaintiff's Complaint, it is my reasonable belief that Cal-Western has been named in this action solely in its capacity as Trustee, and not arising out of any

-1-
DECLARATION OF NON-MONETARY STATUS

1    wrongful acts or omissions on its part in the performance of its duties as Trustee. The basis for my

2    reasonable knowledge or belief set forth above is that Cal-Western has not been involved in any way

3    with the property which is the subject of this lawsuit outside of its capacity as Trustee, and has no

4    interest in the property, except to be named as the Trustee under the deed of trust encumbering the

5    property by way of Substitution of Trustee.

6        4.    I am not aware of any evidence produced to date by Plaintiff or the remaining

7    Defendants, or of any facts, documents, or testimony tending to suggest that Cal-Western engaged

8    in any misconduct in connection with the performance of its duties as Trustee.

9        5.    Pursuant to Civil Code § 2924(b), a foreclosure trustee incurs no liability for reliance

10   in good faith on information provided in good faith by the beneficiary regarding the nature and

11   amount of the default under the secured obligation. Thus, Cal-Western was entitled to rely on the

12   beneficiary's representations of the nature and amount of default.

13       6.    The Complaint makes no credible allegations that Cal-Western failed to perform any

14   of its duties as a Trustee, and a review of Cal-Western's file confirms that Cal-Western complied

15   with the applicable foreclosure statutes. To wit:

16       a.    The Notice of Default with attached Declaration under Civil Code § 2923.5 was

17             properly recorded pursuant to Civil Code § 2924(a). Cal-Western was not involved

18             with the due diligence aspects of Civil Code § 2923.5 and was entitled to rely on the

19             Declaration executed by Wells Fargo Bank, N.A. and provided to Cal-Western for

20             use in preparing and recording the Notice of Default, pursuant to Civil Code §

21             2924(b). A true and correct copy of the recorded Notice of Default is attached hereto

22             as **Exhibit A**.

23       7.    None of the remaining Defendants filed a Cross-Complaint against Cal-Western

24   alleging any defect in the performance of its duties as trustee, either under the Deed of Trust, or the

25   applicable statutes set forth in Civil Code §§ 2924, *et seq*.

26       8.    Given the foregoing facts, Cal-Western hereby agrees to be bound by whatever

27   non-monetary Order or Judgment that this Court issues with regard to the Deed of Trust which is

28   the subject of this lawsuit.

-2-
**DECLARATION OF NON-MONETARY STATUS**

1    I declare under penalty of perjury under the laws of the State of California that the foregoing

2  is true and correct.

3    Executed this ___30th___ day of May, 2012, at El Cajon, California.

4

5

6                                    DECLARANT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NON-MONETARY STATUS

# EXHIBIT A



**This page is part of your document - DO NOT DISCARD**



## 20120132136



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/25/12 AT 08:00AM**

| | |
|---|---:|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201201250180006

**00005281253**



003761408

**SEQ:**
**04**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E145791

t35

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004



01/25/2012

*20120132136*

Trustee Sale No. 1351137-10
APN: 6163-019-005
Ref: MARTINEZ, CRUZ

Space Above This Line For Recorder's Use

Property Address: 118 EAST REEVE STREET, COMPTON  CA  90220-4814

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $11,834.24 as of January 24, 2012, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO BANK, NA

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004 CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

NODCA

3

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN:

CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated March 14, 2007 executed by

CRUZ MARTINEZ, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY as trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PLAZA HOME MORTGAGE, INC, ITS SUCCESSOR AND ASSIGNS as beneficiary, recorded as document 20070623484 on March 20, 2007 in book XX page XX official records in the office of County Recorder of LOS ANGELES County, California, describing land therein as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST,

said obligations including a promissory note for the principal sum of $292,500.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due September 1, 2011 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached SB1137 Declaration.

T.S. 1351137-10
Dated:          January 24, 2012          CAL-WESTERN RECONVEYANCE CORPORATION


Signature By  _____

                                  **Marco Marquez**

By LSI Title Company, As Agent



# NOTICE OF DEFAULT DECLARATION
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

1351137-10

Wells Fargo Bank, N.A.
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: CRUZ MARTINEZ
Co Borrower:
Property Address: 118  EAST REEVE STREET
COMPTON, CA 90220

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met.  This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied and vacant properties are exempt from the requirements of CA Civil Code 2923.5.

The requirement indicated by "X" was met by the Beneficiary:

X    The Beneficiary has made contact with the borrower pursuant to CA Civil Code
        2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the borrower's
        financial situation and explore options for the borrower to avoid foreclosure.

___   Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the
        Beneficiary.

___   The borrower has surrendered the property as evidenced by either a letter confirming the
        surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or
        authorized agent pursuant to CA Civil Code 2923.5(h)(1).

___   The borrower has contracted with an organization, person, or entity whose primary
        business is advising people who have decided to leave their homes on how to extend the foreclosure
        process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil
        Code 2923.5(h)(2).

___   The borrower has filed for bankruptcy and the proceedings have not been finalized
        pursuant to CA Civil Code 2923.5(h)(3).

___   An Exemption as identified in 2923.5 (h) & (i) applies:  The loan did not originate
        between January 1, 2003 and December 31, 2007 or the property is deemed Non-owner occupied or
        vacant.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 12-30-11

_Shari A Brawley_
Wells Fargo Bank, N.A.
_Sheri L. Brawley_
VP of Loan Documentation

# EXHIBIT "C"

Branch :F7I,User :TZ02                    Comment:                              Station Id :V0WX



03/20/07

**20070623484**

**Gateway Title Company - Orange**

Recording Requested By:
PLAZA HOME MORTGAGE, INC.

Return To:
PLAZA HOME MORTGAGE, INC.

5090 SHOREHAM PLACE, STE. 206
SAN DIEGO, CA  92122
Prepared By:

PLAZA HOME MORTGAGE, INC.
5090 SHOREHAM PLACE #206
SAN DIEGO, CA 92122
(858) 346-1200

[023495-36]                        ——————[Space Above This Line For Recording Data]——————

# DEED OF TRUST

LOAN NO.:  11703000                                          MIN   100109800000597063
ESCROW NO.:  07-18860S                                       MERS Phone: 1-888-679-6377

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated        MARCH 14, 2007
together with all Riders to this document.
(B) "Borrower" is
CRUZ  MARTINEZ, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY

Borrower's address is 118 EAST REEVE STREET, COMPTON, CA  90220-
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
PLAZA HOME MORTGAGE, INC.

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
V-6A(CA) (0207).01                              Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/06)

LOS ANGELES,CA                          Page 1 of 16                  Printed on 5/18/2012 1:01:24 PM
Document: TD 2007.623484

*APN # 6163-015-005* (handwritten, vertical)

Lender's address is

5090 SHOREHAM PLACE, STE. 206, SAN DIEGO, CA  92122

(D) "Trustee" is

LAND AMERICA - GATEWAY TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated        MARCH 14, 2007

The Note states that Borrower owes Lender

TWO HUNDRED NINETY TWO THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X

Dollars

(U.S. $ 292,500.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        APRIL 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ 1-4 Family Rider
☐ Graduated Payment Rider      ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☐ Balloon Rider                ☐ Rate Improvement Rider       ☐ Second Home Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

V-6A(CA) (0207).01                    Page 2 of 15                    Form 3005  1/01

Branch :F7I,User :TZ02                    Comment:                                    Station Id :V0WX

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                    COUNTY                     of              LOS ANGELES                    :
            [Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 6363-019-005                          which currently has the address of
                        118 EAST REEVE STREET                                    [Street]
            COMPTON                      [City] , California        90220-          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

V-6A(CA) (0207).01                          Page 3 of 15                          Form 3005 1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

V-6A(CA) (0207).01                        Page 4 of 15                        Form 3005  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

V-6A(CA) (0207).01                    Page 6 of 15                    Form 3005  1/01

Branch :F7I,User :TZ02                    Comment:                              Station Id :V0WX

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

V-6A(CA) (0207).01                        Page 7 of 15                          Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Branch :F7I,User :TZ02                    Comment:                         Station Id :V0WX

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Branch :F7I,User :TZ02                         Comment:                                        Station Id :V0WX

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

V-6A(CA) (0207).01                     Page 10 of 15                          Form 3005  1/01

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

V-6A(CA) (0207).01                          Page 11 of 15                          Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

V-6A(CA) (0207).01                          Page 12 of 15                          Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

V-6A(CA) (0207).01                    Page 13 of 15                    Form 3005  1/01

Branch :F7I,User :TZ02                              Comment:                                      Station Id :V0WX

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                   -Witness

_____
                                   -Witness

_Cruz Martinez_____(Seal)          _____(Seal)
CRUZ MARTINEZ          -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                          -Borrower

V-6A(CA) (0207).01              Page 14 of 15                  Form 3005  1/01

State of  CALIFORNIA
County of Los Angeles                              } ss.

On March 14, 2007                    before me, Jessica Alvarado, notary public
                                                              personally appeared
CRUZ MARTINEZ

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies); and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)





V-6A(CA) (0207).01                          Page 15 of 15                          Form 3005  1/01

Branch :F7I,User :TZ02                              Comment:                                                    Station Id :V0WX

File No:  1023495

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

LOT 5 OF TRACT NO. 12775, IN THE CITY OF COMPTON, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 260, PAGE 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY.

Assessor's Parcel Number:      6163-019-005



**This page is part of your document - DO NOT DISCARD**



## 20111180154



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/31/11 AT 11:23AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201108310790100

00004590155

003475687

**SEQ:
01**

DAR - Mail (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

## PROOF OF SERVICE

I, Kim Walsh, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On June 15, 2012, I served the within **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §1441(b)**     on all interested parties in this action as follows:

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**Garry Lawrence Jones, Esq.**
**Law Offices of Garry Lawrence Jones**
**400 West 4th Street, 2nd Floor**
**Santa Ana, CA  92701**
**Tel: (714) 558-7999 ; Fax: (714) 558-7190**
**glj@gljlaw.com**

[X]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]    (BY OVERNITE EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[X]    (FEDERAL) I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2012, at Newport Beach, California.

Kim Walsh

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 5224 RGK (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division** | **[ ] Southern Division** | **[ ] Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

00/00/2012  15:17:27  FAX 2132499990        NATIONWIDE LEGAL EXPRESS



# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>CRUZ MARTINEZ | DEFENDANTS<br>WELLS FARGO BANK, N.A. successor by merger to WELLS FARGO HOME MORTGAGE (erroneously sued as WELLS FARGO HOME MORTGAGE, a subsidiary of WELLS FARGO BANK) |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Garry Lawrence Jones, Esq., SBN 66344<br>400 West 4th Street, 2nd Floor, Santa Ana, CA  92701<br>Tel: (714) 558-7999 / Fax: (714) 558-7190 | Attorneys (If Known)<br>Wright, Finlay & Zak, LLP<br>T. Robert Finlay, Esq. SBN 167280; Kristina M. Pelletier, Esq. SBN 279533<br>4665 MacArthur Court, Suite 200, Newport Beach, CA  92660<br>Tel: (949) 477-5050 / Fax: (949) 608-9142 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ Unknown

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1441(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☒ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                      CIVIL COVER SHEET                      Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | South Dakota |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Kristin Pelletier_    Date 6/15/12

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# PROOF OF SERVICE

I, Kim Walsh, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On June 15, 2012, I served the within **CIVIL COVER SHEET**   on all interested parties in this action as follows:

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**Garry Lawrence Jones, Esq.**
**Law Offices of Garry Lawrence Jones**
**400 West 4th Street, 2nd Floor**
**Santa Ana, CA  92701**
**Tel: (714) 558-7999 ; Fax: (714) 558-7190**
glj@gljlaw.com

[X]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY OVERNITE EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[X]   (FEDERAL) I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2012, at Newport Beach, California.

_Kim Walsh_
Kim Walsh